**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CASTON M. ROSA, #Y47968,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 24-cv-02343-SMY** |
| | ) | |
| **LATOYA HUGHES,** | ) | |
| **ANTHONY D. WILLS,** | ) | |
| **WEXFORD HEALTH CARE SERVICE,** | ) | |
| **AMANDA SCHULTZ,** | ) | |
| **ALLISON HARGIS,** | ) | |
| **and C/O GARCIA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Caston Rosa, an inmate in the custody of the Illinois Department of Corrections currently incarcerated at Hill Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations stemming from the denial of medical care for chronic back pain at Menard Correctional Center. The Amended Complaint (Doc. 20) is subject to preliminary review under 28 U.S.C. § 1915A, which requires this Court to dismiss any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant.

### Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint (Doc. 20, pp. 7-13): Plaintiff met with Nurse Amanda Schultz (Menard's head medical technician) to discuss his chronic lower back pain in March 2023. *Id*. at 7. Plaintiff explained that he was involved in an automobile accident in 2013 and received physical therapy for his back injuries until the therapist

1

terminated treatment and recommended further evaluation with a specialist. Plaintiff stated that his ongoing back pain limits his daily activities, which consist of drawing, reading, writing, and exercise. He asked the nurse whether a CT scan or MRI was appropriate.

Nurse Schultz explained that a response from a specialist would take 3 to 6 months. When Plaintiff said that was too long, Nurse Schultz asked if he wanted gabapentin. Plaintiff admitted knowing nothing about the medication. Nurse Schultz described it as the drug "all you guys make up [ ] stories for." *Id*. Plaintiff assured the nurse that he just wanted something to cure his back pain. She recommended submitting another request. In the following months, Plaintiff submitted numerous verbal and written requests for treatment to staff and correctional officers. *Id*. at 8. Defendants repeatedly denied him pain medication and treatment.

On July 11, 2023, Nurse Schultz passed by Plaintiff's cell after he attended recreational yard for the first time in 70 days and announced that he missed his nurse sick call appointment. Plaintiff was unaware nurse sick call was scheduled that day. C/O Brooks called inmates for yard several hours earlier at 10:00 a.m. At the time, Plaintiff informed C/O Brooks of his chronic back pain, and the officer said he was not a medical provider. The officer then threatened to leave Plaintiff behind if he did not exit his cell for yard. Plaintiff attended yard. When he returned and asked the nurse for medicine around 1:00 p.m., Nurse Schultz commented that he "wasn't that concerned about [his] back or else [he] would have stayed [his] dumbass inside from yard and went to [ ] sick call." *Id*. Nurse Schultz then said she forgot his medication, but she would give it to C/O Brooks. Plaintiff never received medication that day.

The following day, Plaintiff asked C/O Brooks if he remembered *not* telling Plaintiff about his sick call appointment on July 11, 2023. C/O Brooks said he only remembered telling *somebody* about an appointment, but not specifically Plaintiff. *Id*. at 9. C/O Brooks then asked Plaintiff if

he needed anything, and Plaintiff requested a med tech for treatment of his chronic back pain. C/O Brooks agreed to speak with a med tech and, after doing so, told Plaintiff that a nurse agreed to bring his pain medication later that day.  Around 1:00 p.m., Plaintiff observed Nurse Amanda walk down the hallway and screamed out to her, "I'm Inmate Rosa and I need pain meds for my back!"  *Id*.  She told Plaintiff that she forgot them but would give them to a correctional officer. She added, "Fuck off!"  *Id*.  Plaintiff received no pain medication on July 12, 2023.  He stay up all night in pain and complained to the night shift sergeant.

Plaintiff remained in pain all day on July 13, 2023.  Around 1:00 p.m., he saw Nurse Schultz pass by his cell again, and he screamed out to her, "I need medical assistance, please?"  *Id*. at 9-10.  The nurse said she forgot his medication and would give it to a correctional officer later. She then cussed him out.  Plaintiff never received medication.  *Id*. at 10.

C/O Garcia also ignored Plaintiff's pleas for medical attention for almost 3 months and threatened physical harm when he asked for help.  After suffering "extreme pain" for 20-plus hours on July 13, 2023, Plaintiff stopped C/O Garcia to request medical care for his back pain because he was "seriously going thru it" and was "not joking."  *Id*.  The officer told Plaintiff that he was "not about to pester him today" and instructed him to submit a medical request form.  *Id*.  Plaintiff then threatened to hold his lunch tray until he was seen for his back.  *Id*. at 10-11.  C/O Garcia whispered, "Look you fucking nigger, I don't want to have to come to your cell and fuck your crippled ass up!"  *Id*. at 11.  Fearing for his life, Plaintiff surrendered his tray without incident.  He then called out for medical attention for his back pain until another individual provided him with pain medication.

Grievance Office Coordinator Allison Hargis handled grievances that Plaintiff filed about his chronic back pain, sick call denial, and pain medication denial.  *Id*. at 12.  Even so, she took

inadequate steps to process the grievances and move them to the "next stage." *Id.*

Plaintiff wrote directly to Warden Anthony Wills to complain about his chronic back pain and request medical treatment. The warden deemed multiple grievances emergencies, but took no steps to address his medical needs or ensure that he received treatment. The warden was clearly aware of his chronic back problem and made the decision to turn a blind eye to it. *Id.*

IDOC Acting Director Latoya Hughes exhibited deliberate indifference to Plaintiff's chronic back pain. Plaintiff has emails sent to the IDOC council board, letters from attorneys, and medical records that reflect his request for treatment. However, no effective steps were taken to provide him with care. *Id.* at 12-13.

## Preliminary Dismissals

Plaintiff identifies Wexford Health Care Service as a defendant in the Amended Complaint but makes no allegations against it. Consequently, this defendant cannot be said to have notice of which claims, if any, are directed against the party. Fed. R. Civ. P. 8(a)(2); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Therefore, Wexford Health Care Service will be dismissed from this action without prejudice.

## Discussion

The Court designates the following claim in the *pro se* Amended Complaint:

Count 1:     Eighth Amendment claim against Defendants for responding to Plaintiff's chronic back pain with deliberate indifference in 2023.

**Any other claim that is mentioned in the Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).**

To state a viable Eighth Amendment claim of inadequate medical care, a plaintiff must describe a sufficiently serious medical condition, such as one diagnosed by a physician as requiring

treatment or one where the need for treatment would be obvious to a lay person, and must also allege that each defendant responded to his serious medical need with deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Chronic back pain is objectively serious, even when it responds to treatment with readily available over-the-counter medications. *See Diaz v. Godinez*, 693 F. App'x 440, 443 (7th Cir. 2017). Moreover, "[t]urning a blind eye to a prisoner's complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life-threatening and the failure to treat does not exacerbate the condition." *Id.* (citing *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012)).

Here, Nurse Schultz was allegedly made aware of Plaintiff's chronic back pain during her initial meeting with him in March 2023 and upon her receipt of his subsequent complaints of extreme pain between March and July 2023, but allegedly disregarded his request for treatment and pain relief. Plaintiff further alleges that her denial of treatment caused prolonged and unnecessary pain. These allegations state a colorable Eighth Amendment claim against Nurse Schultz.

C/O Garcia allegedly responded to Plaintiff's complaints of untreated back pain with name-calling, jeering, and threats, and also allegedly refused to help Plaintiff secure any form of treatment from a medical professional. Although a non-medical prison official may defer to the judgment of medical staff, he cannot simply ignore the plaintiff, let alone taunt him. *Berry*, 604 F.3d at 440-41. Therefore, Count 1 will proceed against the officer.

Warden Wills allegedly received numerous complaints and grievances about untreated back pain and deemed several of them emergencies. Plaintiff claims the warden was obviously aware of his untreated back pain and nevertheless turned a blind eye to it, delayed his treatment,

and prolonged his pain thereafter.  Based on these allegations, Count 1 will proceed against Warden Wills.

Allison Hargis served as the grievance office coordinator who allegedly "personally handled multiple grievances" about Plaintiff's back pain, but failed to send them to the next level. *Id*. at 12.  These allegations are insufficient to demonstrate deliberate indifference on her part as Plaintiff identifies no actual grievances that she failed to send to the next level or any steps that she deliberately failed to take to ensure his treatment.

Latoya Hughes is named as a defendant because she served as the Acting IDOC Director, and her subordinates allegedly violated the plaintiff's constitutional rights.  Section 1983 liability hinges on personal involvement in a constitutional deprivation. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014).  In other words, "supervisors are responsible for their own acts but not for those of subordinates." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Because Plaintiff's claim against Latoya Hughes arises from her role as IDOC Acting Director rather than her personal involvement in any denial of treatment requests or treatment decisions, Count 1 will be dismissed without prejudice for failure to state a claim against her.

## **Disposition**

The Amended Complaint (Doc. 20) survives screening under 28 U.S.C. § 1915A, and **COUNT 1** will proceed against **AMANDA SCHULTZ, C/O GARCIA**, and **ANTHONY WILLS**.  However, **COUNT 1** is **DISMISSED** without prejudice against **WEXFORD HEALTH CARE SERVICE, ALLISON HARGIS,** and **LATOYA HUGHES** for failure to state a claim.

The Clerk shall prepare for **AMANDA SCHULTZ, C/O GARCIA**, and **ANTHONY WILLS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a

copy of the Amended Complaint (Doc. 20), and this Memorandum and Order to Defendant's place of employment, once identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of service, as authorized by the Federal Rules of Civil Procedure.

If Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants must only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  FED. R. CIV. P. 41(b).

**The Clerk's Office is DIRECTED to ENTER the standard qualified protective order under the Health Insurance Portability and Accountability Act and TERMINATE Defendants WEXFORD HEALTH CARE SERVICE, ALLISON HARGIS, and LATOYA HUGHES as defendants in CM/ECF.**

**IT IS SO ORDERED.**

**DATED:    May 27, 2025**              _s/ Staci M. Yandle_
                                        **STACI M. YANDLE**
                                        **United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify Defendant of your lawsuit and serve him or her with a copy of your Amended Complaint. After service has been achieved, Defendant will enter an appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days *from the date they are served with this lawsuit*** to receive Defendant's Answer, but it is entirely possible that it will take **90 days** or more. When Defendant has filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendant before filing any motions, to give Defendant notice and an opportunity to respond to those motions. Motions filed before Defendant's counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit evidence to the Court at this time, unless specifically directed to do so.