**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CASTON M. ROSA, #Y47968,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 24-cv-02343-SMY** |
| | ) | |
| **ANTHONY D. WILLS,**<br>**BRENDAN GARCIA,**<br>**and AMANDA CHOATE,**[1] | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, Chief District Judge:**

Plaintiff Caston Rosa filed this action under 42 U.S.C. § 1983 for the alleged denial of medical care for a back injury at Menard Correctional Center in violation of the Eighth Amendment. (Doc. 1). Warden Anthony Wills and Officer Brendan Garcia now move for summary judgment based on Plaintiff's failure to exhaust his administrative remedies in compliance with the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). (Doc. 51). Plaintiff opposes the motion. (Doc. 55). For the following reasons, the warden's motion will be **GRANTED**, and the officer's motion will be **DENIED**.

## BACKGROUND

Plaintiff brings this action under 42 U.S.C. § 1983 against Warden Anthony Wills, Officer Garcia, and Nurse Amanda Choate for inadequate treatment of his chronic back pain at Menard Correctional Center. In the Amended Complaint (Doc. 20), Plaintiff alleges he met with Nurse Choate in March 2023 to discuss chronic back pain stemming from an automobile accident in

[1] Plaintiff originally identified Defendant Amanda Choate as "Nurse Amanda Schultz," *see* Docs. 20, 33, 34, and Defendant Brendan Garcia as "C/O Garcia," *see* Docs. 1, 20, 30. These defendants are referred to herein as "Nurse Amanda Choate" and "Officer Garcia."

2013. *Id*. at 7. When Plaintiff requested further evaluation with a specialist, Nurse Choate explained that a response from a specialist would take up to six months and recommended that he submit another written request for treatment instead. *Id*.

Plaintiff submitted several requests for treatment, but Defendants denied him relief. *Id*. at 8. Nurse Choate forgot his pain medication on July 11, 2023, July 12, 2023, and July 13, 2023. When he requested it, she called him names and failed to deliver it. *Id*. at 9-10. Officer Garcia ignored Plaintiff's pleas for treatment for three months. *Id*. at 10-11. Warden Wills deemed multiple grievances emergencies, but took no steps to ensure treatment. *Id*. The grievance office also failed to process the emergency grievances and move them to the "next stage." *Id*. at 12.

The Court screened the *pro se* Amended Complaint (Doc. 20) under 28 U.S.C. § 1915A and allowed Plaintiff to proceed with the following claim:

> Count 1: Eighth Amendment claim against Defendants Wills, Garcia, and Choate for responding to Plaintiff's back pain with deliberate indifference in 2023.

(Doc. 24). This claim was dismissed against all other defendants. *Id*.

In their Answers, Defendants Wills, Garcia, and Choate asserted an affirmative defense based on Plaintiff's failure to exhaust administrative remedies before filing this lawsuit. (Docs. 39, 43). Defendant Choate later withdrew the affirmative defense. (Docs. 49, 50).

## MOTION FOR SUMMARY JUDGMENT

Defendants Wills and Garcia identify four grievances Plaintiff filed at the institutional level about his back pain. Plaintiff does not name, describe, or complain about the warden in any of them, and the Administrative Review Board (ARB) has no record of an appeal taken from them. Defendants Wills and Garcia therefore seek summary judgment in their favor.

Plaintiff contends that he appealed grievance responses to the ARB when he received them and that he received no responses to his emergency grievances from the institution until after he filed this lawsuit because the staff mishandled the grievances.

**FACTS**

The following material facts are undisputed for purposes of the pending motion unless otherwise noted.[2] On or around October 21, 2024, Plaintiff filed this lawsuit for constitutional deprivations stemming from the denial of medical care for his back pain from April to July 2023. He was in custody of Illinois Department of Corrections (IDOC) at all relevant times. When he asked for help, Officer Garcia disregarded his pain and called him names. Even after Plaintiff filed emergency grievances, Warden Wills did not help him secure treatment.

At the time the claim arose, IDOC had a grievance process in effect for addressing inmate complaints. The procedure is described below and in 20 ILL. ADMIN. CODE §§ 504.800, *et seq*. Menard Correctional Center's Offender Orientation Manual also set forth the procedure for filing grievances and exhausting administrative remedies. All prisoners were provided with a copy of the manual when they entered the facility. Plaintiff received his copy on November 30, 2021. He was aware of the grievance process and could file grievances from any housing unit at Menard.

Plaintiff's grievance records include four grievances relevant to his claim in this case: (1) Grievance #124-7-23; (2) Grievance #256-7-23; (3) Grievance #371-7-23; and (4) Grievance #372-7-23. None of the grievances name, describe, or complain about Warden Wills, and only one mentions Officer Garcia (Grievance #371-7-23). Plaintiff filed each grievance at the facility level. The Administrative Review Board (ARB) has no record of appeals related to these

[2] *See* Defendants' Undisputed Material Facts (Defs. UMF) at Doc. 51 and Plaintiff's Response at Doc. 55.

grievances and issued no final decision. Plaintiff never received responses to his emergency grievances before filing this lawsuit.

**Grievance #124-7-23 – July 3, 2023**

Plaintiff complained of back pain that prompted twenty-plus nurse sick call requests for treatment and pain relief. He marked this grievance as an emergency. Plaintiff did not name a defendant in this grievance. The warden deemed it a non-emergency on July 7, 2023. (Doc. 51-1, p. 13). Due to what the defendants describe as a "facility mix-up" typically caused by the loss or misplacement of a grievance, it was not processed at the facility. (Defs. UMF 6-8; Doc. 51-2, ¶ 15).

**Grievance #256-7-23 – July 9, 2023**

Plaintiff specifically named "Nurse Amanda" (Choate) in connection with the denial of his twenty-plus sick call requests for treatment of chronic back pain and marked this grievance as an emergency. *Id*. The warden agreed that it constituted an emergency on July 14, 2023 and returned it to the grievance office for expedited processing.

The grievance office reviewed the matter on January 15, 2025. A health care unit (HCU) memo issued the same day indicated that Plaintiff was seen in nurse sick call on July 19, 2023 and referred for further treatment. However, a lockdown prevented Plaintiff from attending the appointment scheduled on October 10, 2023, and he was seen in nurse sick call again on January 11, 2025. The grievance office noted that the medical staff planned to schedule an appointment with a provider "in [the] near future." (Doc. 51-1). It denied the emergency grievance on January 16, 2025. *Id*. The facility's chief administrative officer (CAO) affirmed the decision the next day.

**Grievance #371-7-23 – July 13, 2023**

Plaintiff faulted Officers Garcia and Nurse Choate for denying him treatment for back pain after he filed twenty-plus nurse sick call requests. Plaintiff marked this grievance as an emergency. The warden received it on July 18, 2023 and agreed that it described an emergency and forwarded the grievance to the grievance office for expedited processing the same day. On January 15, 2025, a grievance officer reviewed the matter and denied it one day later. The grievance response noted the HCU memo dated January 15, 2025 that referred to a phone call with Nurse Choate wherein she denied purposefully delaying treatment. The grievance officer denied the grievance on this basis on January 16, 2025, and the CAO affirmed the decision on January 17, 2025.

**Grievance #372-7-23 – July 12, 2023**

Plaintiff faulted Nurse Amanda (Choate), among others, for denying his sick call requests and pain medication. Plaintiff designated this grievance an emergency, and the warden marked it as such the same day he received it on July 18, 2023. The grievance was then returned to the grievance office for expedited processing. A grievance officer reviewed it on January 15, 2025 and referenced another HCU memo with the same date that mentioned Plaintiff's multiple trips to sick call for treatment. The grievance officer denied the grievance on January 16, 2025, and the CAO affirmed it on January 17, 2025.

**LEGAL STANDARDS**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party, *i.e.*, the prisoner. *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841

(7th Cir. 2004). The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility.

When presented with a motion for summary judgment on the issue of exhaustion, the district court's approach to factual disputes is different. In *Pavey*, the Seventh Circuit Court of Appeals instructed district courts to conduct an evidentiary hearing to resolve contested issues of fact concerning exhaustion. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008). The Supreme Court partially overruled *Pavey* in *Perttu v. Richards*, 605 U.S. 460, 464 (June 18, 2025), when it held that exhaustion disputes must be reserved for a jury if contested facts on exhaustion are intertwined with factual disputes on the merits of a claim. Therefore, when the district court is presented with a motion for summary judgment on exhaustion with disputed material facts, it must consider whether intertwinement between exhaustion and the merits requires a jury trial. In this case, there is no intertwinement requiring a jury trial[3] and no material factual disputes requiring a *Pavey* hearing. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009).

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), requires a prisoner to exhaust all available administrative remedies before bringing a suit in federal court about the conditions of his confinement. *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). To properly exhaust, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

---

[3] Unlike *Perttu*, the material facts surrounding exhaustion are not disputed. There is no intertwinement between the facts underlying exhaustion and the merits of the medical deliberate indifference claim.

The Illinois Administrative Code describes the process that inmates in IDOC custody follow to exhaust administrative remedies. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017). An inmate facing an emergency may submit an emergency grievance directly to the Chief Administrative Officer (CAO) (Warden). 20 ILL. ADMIN. CODE §§ 504.840(a)-(c). If the CAO deems the grievance an emergency, it is expedited for processing in whatever manner the CAO specifies. *Id*. If the grievance describes no emergency, it is denied as a non-emergency and the offender is notified to resubmit it in accordance with the standard grievance procedure. *Id*.

The standard grievance procedure requires an inmate to file his grievance with a counselor within sixty (60) days of the incident giving rise to the grievance. 20 ILL. ADMIN. CODE § 504.830(e). If the grievance is not resolved informally through the counselor, it must be submitted in writing to a grievance officer, who reports his or her findings and recommendations in writing to the CAO within two (2) months after receiving the written grievance, when reasonably feasible. *Id*. The CAO then provides the inmate with a written decision. *Id.* If, after receiving the response, the inmate believes that the problem, complaint, or grievance is unresolved, he may file an appeal with the IDOC Director through the Administrative Review Board (ARB) within thirty (30) days of the CAO's decision. 20 ILL. ADMIN. CODE § 504.850(a). The inmate must attach copies of responses from the grievance officer and CAO to his appeal. *Id*. The ARB then considers the matter and submits a written report of its findings and recommendations to the Director, who makes a final determination within six (6) months of receipt of the matter, when reasonably feasible. 20 ILL. ADMIN. CODE §§ 504.850(d), (e).

## Discussion

### Warden Anthony Wills

Plaintiff used the inmate grievance process to file four grievances that are applicable to his claim in this case: (1) Grievance #124-7-23; (2) Grievance #256-7-23; (3) Grievance #371-7-23; and (4) Grievance #372-7-23. None of these grievances name, describe, or otherwise identify the warden in connection with his claim.

Grievances function to "giv[e] prison officials a fair opportunity to address [an inmate's] complaints." *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). In that vein, the IDOC grievance process requires that an inmate grievance must contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject or otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the inmate does not know the name of the person, the inmate "must include as much descriptive information about the individual as possible." *Id*. The grievance forms used by Plaintiff explicitly instruct the grievant to: "[p]rovide information including a description of what happened, when and where it happened, and the name or identifying information for each person involved." (*See* Doc. 51-1, pp. 2, 6, 10, 13).

Here, Plaintiff did not mention the warden by name, title, description, or otherwise in the four grievances at issue. Although Warden Wills reviewed each grievance and decided whether it described an emergency, this did not put the warden on notice of a claim against him. Plaintiff's grievances do not fault the warden for any act or omission, and the warden deemed each processed grievance to be an emergency. As such, Plaintiff failed to exhaust the administrative remedies for his claim against the warden. Warden Wills is entitled to summary judgment.

**C/O Brendan Garcia**

Grievance #371-7-23 is the only grievance that names, mentions, or describes Officer Garcia. The grievance, dated July 13, 2023, faults Garcia (and Choate) for denying Plaintiff treatment for his chronic back pain after he filed twenty-plus nurse sick call requests. The warden received the emergency grievance on July 18, 2023, agreed that it described an emergency, marked it as an emergency, and forwarded it to the grievance office for expedited processing the same day. However, the grievance office did not review it until eighteen months later.

A grievance officer denied the emergency grievance on January 16, 2025 on the basis that Plaintiff was seen in nurse sick call on July 19, 2023 and referred for an appointment October 10, 2023. Although this appointment was later cancelled, Nurse Choate denied delaying Plaintiff's treatment. The CAO affirmed the grievance denial on January 17, 2025, nearly three months after Plaintiff filed this lawsuit on October 21, 2024.

Plaintiff was not required to appeal the favorable decision he received when Warden Wills deemed his grievance an emergency on July 18, 2023. *See Thornton v. Snyder*, 428 F.3d 690, 695 (7th Cir. 2005) (The "requirement to exhaust 'all available' remedies requires that *some* remedy is available to the inmate through the administrative process, even if not necessarily the relief desired."); *Ross v. County of Bernalillo*, 365 F.3d 1181, 1187 (10th Cir. 2004) ("Prisoners are not required to file additional complaints or appeal favorable decisions."). Thus, at that time his grievance was deemed an emergency on July 18, 2023, there was nothing to appeal. Plaintiff received the response he sought when the warden deemed his grievance an emergency. Moving to the next step of the grievance process would have provided no additional relief at the time.

Moreover, the exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable

ones." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Ross v. Blake*, 578 U.S. 632, 640-41 (2016) (alteration in original)). "An administrative scheme can be 'unavailable' to a prisoner when a prison fails to respond to a prisoner's grievance and, in so doing, prevents that prisoner from exhausting administrative remedies." *Id*. (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (internal quotation marks omitted)).

To the extent Grievance #371-7-23 could be exhausted against Officer Garcia, Plaintiff took all available steps to exhaust. After three months, an appointment with a provider was cancelled due to a lockdown. However, Plaintiff did not receive a grievance response with this, or any other, information. He eventually learned that his requests for treatment of chronic back pain and related emergency grievances were disregarded after filing this lawsuit in October 2024. Under these circumstances, the grievance process was rendered unavailable to Plaintiff. Officer Garcia's motion for summary judgment will therefore be denied.

## DISPOSITION

The Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 51) is **GRANTED** as to **ANTHONY D. WILLS** and **DENIED** as to **BRENDAN GARCIA**; **COUNT 1** is **DISMISSED** without prejudice against **ANTHONY D. WILLS** and will proceed against **BRENDAN GARCIA** and **AMANDA CHOATE**.

Plaintiff's Motion for Status (Doc. 56) is **GRANTED**. Now that the issue of exhaustion is resolved, the Court will enter a separate Merits Scheduling and Discovery Order with instructions and deadlines for litigation of Count 1.

**Because no other claims remain pending against Anthony D. Wills, the Clerk's Office is DIRECTED to TERMINATE Anthony D. Wills as a defendant in CM/ECF**. Judgment shall enter accordingly at the close of this case.

**IT IS SO ORDERED.**

**DATED: September 23, 2026**

**STACI M. YANDLE**
**Chief U.S. District Judge**